2026-1229

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

---

**_KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S.,_**

*Plaintiff-Appellant*

**_ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S.,_**

*Plaintiff*
*v.*

**_UNITED STATES, REBAR TRADE ACTION COALITION,_**

*Defendants-Appellees*

Appeal from the United States Court of International Trade in
No. 1:23-cv-00131-GSK, Gary S. Katzmann

**OPENING BRIEF FOR PLAINTIFF-APPELLANT
KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET, A.S.**

Daniel L. Delnero
Allen W. Yee
**BGD L**EGAL **& C**ONSULTING**, LLC**
3017 Bolling Way NE Ste 130
Atlanta, GA 30305
(770) 864-7740
Email: Daniel.Delnero@bgdlc.com

Dated: February 9, 2026

*Counsel for Plaintiff-Appellant Kaptan Demir Celik Endustrisi ve Ticaret, A.S.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2026-1229 |
| **Short Case Caption** | Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. US |
| **Filing Party/Entity** | Kaptan Demir Celik Endustrisi ve Ticaret A.S. |

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 02/09/2026

Signature: /s/ Daniel L. Delnero

Name: Daniel L. Delnero

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. <br><br> ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. <br><br> ☑ None/Not Applicable |
| Kaptan Demir Celik Endustrisi ve Ticaret A.S. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐  Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable     ☑ Additional pages attached

| | | |
|---|---|---|
| Law Offices of David L. Simon, PLLC<br>David L. Simon | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☑ Yes (file separate notice; see below)    ☐ No    ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable     ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

STATEMENT OF RELATED CASES…………………………………………..…1

STATEMENT OF JURISDICTION…………………………………………..…2

STATEMENT OF THE ISSUE PRESENTED FOR REVIEW……………….....2

STATEMENT OF THE CASE…………………………………………………..2

    I.      NATURE OF THE CASE……………………………………………..2

    II.     STATEMENT OF THE FACTS………………………………………3

        A. The Colliers Review…………………………………………………4

        B. The Cushman & Wakefield Report………………………………..6

        C. The CIT Originally Rejects Use of the Colliers Review………….7

        D. The CIT Affirms Commerce's Sole Use of the Colliers Review
           Despite Previously Identifying Legal Prohibitions to Doing So.....9

SUMMARY OF ARGUMENT…………………………………………………...11

ARGUMENT…………………………………………………………………...14

    I.      STANDARD OF REVIEW…………………………………………14

    II.     THE CIT ERRED IN AFFIRMING COMMERCE'S USE OF THE
             IRRELEVANT COLLIERS REVIEW OF PROPERTY TRENDS IN
             GREATER ISTANBUL………………………………………………..15

        A. Use of the Colliers Review Was Not Reasonable………………..15

i.      Use of a benchmark of suburban Istanbul land values for undeveloped industrial land located 750 miles away is *per se* unreasonable and not supported by substantial evidence…16

ii.      The Colliers Review is not a valuation and cannot be used to value real estate values, particularly in a distant province 750 miles from the focus of the Review………………………..18

     a. The Colliers Review does not meet the substantial evidence test because it does not disclose its underlying data, rendering it unreliable……………………………20

     b. The Colliers Review is unreliable and not supported by substantial evidence because it does not disclose the method by which the rent values were calculated……..22

B. The CIT and Commerce's Rejection of the Cushman & Wakefield Report is not Supported By Substantial Evidence………………23

i.      Rejection of the Cushman & Wakefield Report for including data from 2021 and 2022 adjusted for inflation is not supported by substantial evidence………………………..23

ii.      The record contains no evidence – substantial or otherwise – showing the Cushman & Wakefield Report is a "litigation-inspired fabrication……………………………………..25

C. The Cushman & Wakefield Report Is the *Only* Evidence in the Record of the Value of the Nur Leasehold in Trabzon…………..27

CONCLUSION…………………………………………………………………...29

# TABLE OF AUTHORITIES

## CASES

*24/7 Records, Inc. v. Sony Music Ent., Inc.*,

   514 F. Supp. 2d 571 (S.D.N.Y. 2007) .................................................................... 22

*Burlington Truck Lines, Inc. v. United States*,

   371 U.S. 156 (1962) ................................................................................................ 14

*Cayuga Indian Nation of New York v. Pataki*,

   83 F. Supp. 2d 318 (S.D.N.Y. 2000) ................................................................ 20, 21

*CS Wind Malaysia Sdn. Bd. v. United States*,

Slip Op. 25-149, 2025 WL 3496986 (C.I.T. Dec. 5, 2025) .................................. 16, 29

*Downhole Pipe & Equip., L.P. v. United States*,

   776 F.3d 1369 (Fed. Cir. 2015) .............................................................................. 14

*Gallant Ocean (Thailand) Co. v. United States*,

   602 F.3d 1319 (Fed. Cir. 2010) .............................................................................. 14

*Hyundai Elecs. Indus. Co. v. United States*,

   899 F.2d 1204 (Fed. Cir. 1990) .............................................................................. 15

*Nippon Steel Corp. v. United States*,

   337 F.3d 1373 (Fed. Cir. 2003) .............................................................................. 16

*NLRB v. Columbian Enameling & Stamping Co.*,

   306 U.S. 292 (1939) ................................................................................................ 14

*Old Gate Partners, LLC v. Paddock Enterprises, LLC*,

    2024 WL 3520168 (D. Conn. May 30, 2024) ......................................................... 21

*Ozdemir Boru San. Ve Tic Ltd. Sti. v. United States*,

    273 F. Supp. 3d. 1225 (C.I.T. 2017). ..................................................................... 16

See *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*,

    No. 24-1431 (Fed. Cir. docketed Feb. 2, 2024) ....................................................... 4

See *Lickteig v. Cerberus Cap. Mgmt., L.P.*,

    589 F. Supp. 3d 302 (S.D.N.Y. 2022) .................................................................... 26

*United States v. Guo*,

    23 Cr. 118, 2024 WL 2262706 (S.D.N.Y. May 17, 2024) ..................................... 22

*Universal Camera Corp. v. NLRB*,

    340 U.S. 474, 477 (1951) ...................................................................................... 14

*Water Pollution Control Auth. of City of Norwalk v. Flowserve US Inc.*,

    No. 14-CV-00549, 2018 WL 1525709 (D. Conn. March 28, 2018) ....................... 21

### STATUTES

19 U.S.C. § 1516a(b)(1)(B)(i) ....................................................................................... 14

19 U.S.C. § 1677f(i)(3)(A) ............................................................................................ 16

28 U.S.C. § 1292(a)(1) .................................................................................................... 2

28 U.S.C. § 1581(c)..................................................................... 2

5 U.S.C. § 706(2)(A)................................................................. 14

## Administrative Determinations & Publications

*Kaptan Demir Celik Endustrisi Ve Ticaret A.S. v. United States*,

   Court No. 23-00131, Slip Op. 24-116 (CIT October 21, 2024) ("*Remand Order*") 3

*Steel Concrete Reinforcing Bar from the Republic of Turkey: Final Results of*

   *Redetermination Pursuant to Remand; Court No. 23-00131; Slip Op. 24-116 (Dep't*

   *Commerce Jan. 21, 2025*) ................................................................. 1, 5

## STATEMENT OF RELATED CASES

Pursuant to Rule 47.5 of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for Plaintiff-Appellant Kaptan Demir Celik Endustrisi ve Ticaret A.S. ("Kaptan") is aware of three other cases appealing the same or similar Countervailing Duty issues. These cases may affect, or be affected by, this Court's decision, as they involve the same issue regarding the valuation of the Nur leasehold (as defined below) though four periods of review (2018, 2020, 2021, and 2022). The present appeal pertains to the 2020 Review. *See Steel Concrete Reinforcing Bar from the Republic of Turkey: Final Results of Redetermination Pursuant to Remand*; Court No. 23-00131; Slip Op. 24-116 (Dep't Commerce Jan. 21, 2025) ("Final Redetermination Results"). The 2021 and 2022 matters are still pending before the Court of International Trade ("USCIT"), as Court Nos. 24-0096 and Court No. 25-cv-0225 respectively. The 2018 matter is pending before this Court. See *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States* ("*Kaptan I Appeal*"), No. 24-1431 (Fed. Cir. docketed Feb. 2, 2024). The 2018 appeal specifically contests "Commerce's determination that subsidies received by Nur . . . were properly attributed to Kaptan on the basis of a cross-owned input supplier relationship as defined by 19 C.F.R. §351.525(b)(6)(iv)." *Kaptan I Remand*, 666 F. Supp. 3d at 1338.

## STATEMENT OF JURISDICTION

Pursuant to Rule 28(a)(4) of the Rules of the United States Court of Appeals for the Federal Circuit, counsel for Plaintiff-Appellant Kaptan states this Court's jurisdiction rests upon the following bases: (a) The United States Court of International Trade ("CIT") possessed jurisdiction pursuant to 28 U.S.C. § 1581(c); (b); the statutory basis for this Court's jurisdiction on appeal is 28 U.S.C. § 1292(a)(1); and (c) The CIT entered its final judgment on October 6, 2025. Pursuant to Rule 4(a)(1)(B)(ii) of the Federal Rules of Appellate Procedure, this appeal was filed timely on December 3, 2025.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Whether the CIT erred in affirming the Department of Commerce's use of marketing material from Colliers International discussing real estate trends in Greater Istanbul to value a lease located in Trabzon, Turkey 750 miles away, rather than the Cushman & Wakefield Report commissioned by Kaptan to analyze the value of the actual Nur leasehold located in Tabzon.

## STATEMENT OF THE CASE

### I.  NATURE OF THE CASE

This is an appeal of the CIT final decision in *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, Slip Op 25-130 (C.I.T. Oct. 6, 2025, J. Katzmann), Appx26. The CIT sustained Commerce's use of a Colliers document regarding

trends in the Greater Istanbul real estate market to value a lease located in the village of Surmene, province of Trabzon, Turkey, a rural area located 750 miles from Greater Istanbul, and the resulting CVD margin of 1.26% in its Final Results, of which 0.86% is attributable to Commerce's use of the Colliers land-value review. *Id.* at Appx47; *Kaptan Demir Celik Endustrisi Ve Ticaret A.S. v. United States*, Court No. 23-00131, Slip Op. 24-116 (CIT October 21, 2024) ("*Remand Order*") at Appx8.

## II. STATEMENT OF THE FACTS

Plaintiff-Appellant Kaptan is a producer of steel concrete reinforcing bar (commonly called "rebar") in the Republic of Turkey. As the CIT noted, the dispute between Kaptan and Commerce has been "an odyssey filled with twists and turns." Slip Op. 25-130 at Appx27. Even the 2023 review of the 2020 countervailing duty order involved multiple remands and a litany of issues. *Id.* For purposes of this appeal, however, the only remaining issue is Commerce's decision to use a Colliers real estate trends document and disregard a Cushman & Wakefield Report to value a lease held by Nur Gemicilik ve Ticaret A.S. ("Nur"), an affiliated company to Kaptan (the "Nur leasehold").

Nur, a shipbuilding entity, received vacant, undeveloped land in the remote province of Trabzon on a rent-free basis for a period of 49 years in 2014. Letter from Law Offices of David L. Simon, PLLC to Sec'y Commerce, re: Steel Concrete Reinforcing Bar from Turkey; Kaptan Benchmark Submission (Oct. 31, 2022)

("Kaptan Benchmark Submission"), Exhibit 1 ("C&W Report"), at Appx226. The land consisted of property reclaimed from the Black Sea in a region 750 miles from Istanbul, far closer to the Armenian and Iranian borders than to Istanbul or the European section of Turkey. C&W Report at Appx222. Pursuant to the program, Nur was required to develop the land into industrial or commercial use. *Id.* at Appx224.

In its review covering the 2020 period, Commerce determined that the Nur leasehold was countervailable and attributable to Kaptan. *Remand Order*, at Appx7-8. Commerce calculated the value of the Nur leasehold by multiplying the square meter of the lease by the value per square meter of industrial land in the suburban Istanbul city of Cerkezkoy, as taken from the Colliers Turkey Real Estate Market Review, Second Half 2020 ("Colliers Review") *Id.* at Appx8. Commerce's use of the Colliers Review, rather than a valuation report commissioned by Kaptan from Cushman & Wakefield, is the only issue in this appeal.[1]

## A. The Colliers Review

Commerce based its valuation of the Nur leasehold entirely on the Colliers Review. *See Steel Concrete Reinforcing Bar from the Republic of Turkey: Final Results of Redetermination Pursuant to Remand*; Court No. 23-00131; Slip Op. 24-116 (Dep't Commerce Jan. 21, 2025) ("*Final Redetermination Results*"), at

---

[1] Kaptan did not challenge whether a benefit to its affiliateNur was chargeable to Kaptan in the proceedings below.

Appx129-130. The Colliers Review reviewed trends in real estate for the Greater Istanbul market. For industrial real estate, it reviewed eight regions of Greater Istanbul. *Id*. at Appx125. Commerce valued the Nur leasehold based on the value given for industrial space in the Cerkezkoy neighborhood, which is located in Western Istanbul on the European side of the city. Colliers Review, at Appx188-190. The Colliers Review is not signed or dated, but was prepared at some point in 2021, as it indicates in various places in the report that it is based on "forecast data as of 12th February 2021," *See* Letter from Wiley Rein, LLP to G. Raimondo, Sec'y of Com., re: RTAC Benchmark Submission, ("RTAC Benchmark Report") at Ex. 1 (Oct. 31, 2022), (the "Colliers Review"), at Appx186-187., and the copyright on the final page indicates that it was copyrighted in 2021. *Id.* at Appx 204.

The Colliers Review listed the price per square meter of industrial space in the Cerkezkoy neighborhood at 15 Turkish Lyra per square meter in the second quarter 2020 and 19 Turkish Lyra per square meter in the fourth quarter 2020. *Id*. at Appx192. It does not, however, cite any actual lease agreements or rental transactions to support the rental values stated for Cerkezkoy or the other seven Istanbul neighborhoods listed in the report. Instead, it simply says "Source: Colliers International," without disclosing *any* underlying data. Collier Report at Appx189-194, Appx196.

The final page of the Colliers Review makes it clear that it is not a valuation report and that it should not be treated as a valuation report:

> This report gives information based primarily on Colliers International data, which may be helpful in anticipating trends in the property sector. However, no warranty is given as to the accuracy of, and no liability for negligence is accepted in relation to, the forecasts, figures or conclusions contained in this report *and they must not be relied on for investment or any other purposes. This report does not constitute and must not be treated as investment or valuation advice or an offer to buy or sell property.*

Colliers Review, at Appx204 (Emphasis added.)

Again, the Colliers Review is not signed by anyone, does not disclose an author, does not disclose any underlying data, and does not indicate that it follows any standards applicable to real estate valuation. It simply gives two numbers, one for the rental value in Suburban Istanbul for Q2 2020 and another for Q4 2020. Commerce, and the CIT, found this to be "substantial evidence" for the value of reclaimed, undeveloped land located 750 miles away.

## B. The Cushman & Wakefield Report

Because there were no existing reports covering the Trabzon region, Kaptan commissioned a report from the internationally respected real estate firm Cushman & Wakefield in response to the Colliers Review of real estate trends in Greater Istanbul. *See* C&W Report, at Appx184. Unlike the Colliers Review, the Cushman & Wakefield Report analyzed the value of real estate in the village of Surmene,

province of Trabzon, Turkey, the actual location of the Nur leasehold. *Id.* at Appx215-216.

The Cushman & Wakefield Report also differs from the Colliers Review in that it is based on independent standards in the valuation industry, specifically the RICS Valuation Standards, Current Edition ("RICS Red Book"). *Id.* at Appx217. The Cushman & Wakefield Report analyzed rental values in Trabzon based on data available in 2022, and adjusted that data for inflation to determine a 2020 value of 3.46 Turkish Lyra per square meter. *Id.* at Appx240. This number was based on actual asking prices for industrial areas *in Trabzon*, which is the closest city to the Nur leasehold for which transactional data is available. *Id.* at Appx236-240.

The Cushman & Wakefield Report also discussed differences between Trabzon and the Greater Istanbul region referenced in the Colliers Review:

> It should be noted that given regions [in the] above graph [North Marmara regions listed in Colliers] are major industrial zones in Turkey. Trabzon is a tertiary city in terms of population and economy . . . it is not classified as an industrial zone, the city is not preferred by national and industrial investor or occupiers. The city [is] preferred by local investor in general. Rent prices are quite low when compare[d] to North Marmara region. And also the given prices [in the Colliers Review] are for industrial facilities rather than vacant land.

*Id. at* Appx232.

## C. The CIT Originally Rejects Use of the Colliers Review.

Despite being presented with defects in the Colliers Review, Commerce refused to even consider the actual valuation conducted by Cushman & Wakefield,

even after Kaptan submitted documentation demonstrating that the Cushman & Wakefield Report provided more meaningful data and a more objectively accurate benchmark. Letter from Law Offices of David L. Simon, PLLC to Sec'y Commerce, re: Steel Concrete Reinforcing Bar from Turkey; Steel Concrete Reinforcing Bar from Turkey; Case Brief (Jan 10, 2023), ("Kaptan Case Brief") at Appx716-724.

The CIT originally rejected Commerce's sole reliance on the Colliers Review, holding: "Commerce's explanation of its selection of the Colliers report is not in according with law. . . . Commerce must either further explain or reconsider its choice of a benchmark to value the land that Nur used free of charge." Slip Op. 24-116, *(Remand Order)* at Appx18. The Court reasoned: "Instead of confronting [a] possible issue about the Colliers report's 'distortive' nature, Commerce insisted that the Colliers report was the only viable choice – notwithstanding any possible problems with its own viability." *Id.* at Appx20.

The CIT thus faulted Commerce for not explaining why a review based on prices in Greater Istanbul was relevant to reclaimed, undeveloped land in a remote region of the country. *Id.* Appx20-21. Accordingly, the CIT remanded the case and directed Commerce to explain why the Cushman & Wakefield Report should be disregarded and the Istanbul-based Colliers Review should be accepted as the sole measurement of value. *Id.*

On remand, however, Commerce did not point to any substantive deficiencies in the Cushman & Wakefield Report. It also did not point to any data from the Trabzon region of the Nur leasehold or otherwise demonstrate that prices in rural Trabzon are at all similar to those in European Greater Istanbul. In fact, Commerce admitted the opposite – that the Colliers Review does not explain how Greater Istanbul prices are at all relevant to those for reclaimed land in Trabzon. *Final Redetermination Results*, at Appx125. As Commer acknowledged: "The Colliers report does not contain an explanation of how other provinces are affected by the Istanbul market, or, relatedly, a quantification of ow various factors, such as gross domestic product (GDP), distance from the center of Istanbul, or level of development of the property, affect rental rates."

Commerce also did not indicate how the Colliers Review could possibly be reliable without disclosing *any* of its source data or the means by which it converted the sources data to specific lease estimates. *Id.* at Appx124-126. Yet despite these continued defects, following remand, the CIT affirmed the use of the highly questionable and distortive Colliers Review, despite Colliers itself stating that the Review could not be used as a valuation.

### D. The CIT Affirms Commerce's Sole Use of the Colliers Review Despite Previously Identifying Legal Prohibitions to Doing So.

On remand, Commerce made the same argument as the first go-round: that the Cushman & Wakefield Report should be entitled to no weight because Kaptan

commissioned it. (*See Final Redetermination Results*, at Appx125. "However, unlike the Colliers Report, Commerce has a preference against selecting benchmarks like the C&W report, which was prepared for the purposes of the proceeding, as Commerce strongly disfavors benchmarks that are created solely for the purpose of the proceeding.") Commerce next claimed to have selected Cerkezkoy because of the Greater Istanbul neighborhoods discussed in the Colliers Review, Commerce believed it was most similar to the rural, undeveloped, reclaimed land 750 miles away in Trabzon. *Id.* at Appx128-129.

Of course, that's a bit like using data from Staten Island to value land in Idaho because of the five New York City broughs, Staten Island is the least densely populated.

Despite Commerce relying on essentially the same argument as the CIT rejected, following remand, the CIT affirmed Commerce's use of the Colliers Review and rejection of the Cushman & Wakefield Report. The CIT reasoned that Commerce presented "two factors" that justified use of the Colliers Review and disregard of the Cushman & Wakefield Report. See Slip Op. 25-130, at Appx46-47 ("Analyzing both reports, Commerce found that the C&W report bore higher risk of litigation-inspired fabrication because it was commissioned by Kaptan shortly before these proceedings, and Commerce found that the Colliers report data was

more contemporaneous with the period in which Nur acquired the lease, and thus likely more reliable.").

Kaptan now appeals this decision because neither "factor" is supported by even a scintilla of evidence, let alone substantial evidence.

## SUMMARY OF ARGUMENT

The CIT erred in affirming Commerce's use of what was effectively marketing material from Colliers rather than the Cushman & Wakefield Report to value the Nur leasehold. Commerce only has discretion to choose between competing land-value reports when both reports are "reasonable" valuations of the land in question. But where one report directly values the land in question, and another values land 750 miles away, in an area bearing little relation to the land in question, Commerce lacks discretion to use the far-away, unreasonable report. For example, Commerce could not choose to use a land-value report from Midtown Manhattan to value a land subsidy near the port of Brunswick, Georgia – located 14 hours drive down Interstate 95. That is precisely what Commerce did here, however, and the CIT ultimately affirmed it.

Nur, an entity which for purposes of this Appeal can be considered an affiliate of Kaptan, received use of undeveloped industrial land along the Black Sea in the village of Surmene, province of Trabzon, Turkey. To obtain use of the land, Nur had to develop and maintain it. Commerce determined that use of the land was

countervailable and valued the land through a Colliers Review describing broad real estate trends in Greater Istanbul. CIT reasoned that use of the Colliers report was justified because: 1) Commerce has discretion to choose amongst reasonable valuation reports; and 2) the Colliers Review was independent while the Cushman & Wakefield report was commissioned by Kaptan for use in these proceedings.

The CIT must be reversed and the case remanded for redetermination of the value of the Nur leasehold based solely on the Cushman & Wakefield Report for several reasons. First, the Colliers Review cannot be utilized because it is only relevant to real estate trends in Greater Istanbul, not undeveloped land in a distant province 750 miles away. Second, the Colliers Review cannot be considered reliable or substantial evidence of rent values because: 1) the Review itself states that it is not a valuation and cannot be used as a valuation; 2) it does not list any underlying data from which its conclusions are drawn; and 3) it does not list any methodology or methods of calculation.

The Cushman & Wakefield Report, by contrast, must be utilized as the only valuation that provides substantial evidence of the value of the Nur leasehold: 1) it was prepared in accordance with industry-standard methodology; 2) it lists all of the underlying data employed; 3) it details its conclusions and calculation methodology; and 4) relies on data from the actual region of the Nur leasehold.

The CIT decision must therefore be reversed and remanded for a redetermination of the CVD margin using the Cushman & Wakefield report rather than the irrelevant Colliers Istanbul trend analysis.

## ARGUMENT

### I. STANDARD OF REVIEW

This Court reviews CIT decisions *de novo* applying the substantial evidence standard. *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369, 1373 (Fed. Cir. 2015). It "shall hold unlawful any determination, finding or conclusion found…to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). When reviewing whether Commerce's actions are unsupported by substantial evidence, this Court "reviews the record as a whole, including any evidence that 'fairly detracts from the substantiality of the evidence.'" *Gallant Ocean (Thailand) Co. v. United States*, 602 F.3d 1319, 1323 (Fed. Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). It "must do more than create a suspicion of the existence of the fact to be established." *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

Commerce must provide a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). This Court must "hold unlawful and set aside agency action, findings, and conclusions found to be— arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" 5 U.S.C. § 706(2)(A). Agency actions are arbitrary if

there has been "a clear error of judgment." *Hyundai Elecs. Indus. Co. v. United States*, 899 F.2d 1204, 1209 (Fed. Cir. 1990).

## II. THE CIT ERRED IN AFFIRMING COMMERCE'S USE OF THE IRRELEVANT COLLIERS REVIEW OF PROPERTY TRENDS IN GREATER ISTANBUL.

The CIT affirmed Commerce's use of a land value report bearing no relation to the land subsidy in question. After initially rejecting Commerce's use of the Colliers Review, the CIT affirmed it for the following reasons: 1) Commerce has discretion to choose among reasonable reports; and 2) Commerce justifiably gave preferential treatment to an independent report rather than one generated for use in litigation. For the following reasons, both determinations fail as a matter of law.

### A. Use of the Colliers Review Was Not Reasonable.

The core purpose of countervailing duties is to provide "adequate remuneration" to offset subsidies offered by foreign governments for goods exported to the US:

> The Secretary will normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price for the good or service resulting from actual transactions in the country in question. Such a price could include prices stemming from actual transactions between private parties or actual imports. In choosing such transactions or sales, the Secretary will consider product similarity; quantities sold or imported; and other factors affecting comparability.

19 C.F.R. § 351.511(a)(2)(i).

In the case of a land subsidy to an exporter, "adequate remuneration" is determined by comparing the price paid and the fair rental value of the land in question. *See, e.g., Ozdemir Boru San. Ve Tic Ltd. Sti. v. United States*, 273 F. Supp. 3d. 1225, 1249-53 (C.I.T. 2017) (rejecting Commerce's use of a benchmark that included land values in Istanbul to determine the value of land in a lesser developed area of Turkey). Here, that means Commerce had to determine the rental value of the undeveloped industrial land in Surmene, Trabzon. *See CS Wind Malaysia Sdn. Bd. v. United States*, Slip Op. 25-149, 2025 WL 3496986 at *4-5 (C.I.T. Dec. 5, 2025).

In conducting this evaluation, Commerce must put forth "an explanation of the basis for its determination that addresses relevant arguments, made by interested parties who are parties to the investigation or review." 19 U.S.C. § 1677f(i)(3)(A). The explanation must account for contradictory evidence and may only be affirmed if supported by "substantial evidence," which is evidence sufficient that "a reasonable mind might accept as adequate to support a conclusion." *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1379 (Fed. Cir. 2003).

i.   **Use of a benchmark of suburban Istanbul land values for undeveloped industrial land located 750 miles away is *per se* unreasonable and not supported by substantial evidence.**

The CIT has previously rejected Commerce's use of land values in suburban Istanbul to calculated CVD margins for property in lesser developed areas of the

country. *See, e.g., Ozdemir*, 273 F. Supp. 3d. 1249-53. The *Ozdemir* court held that the benchmark used by Commerce was "distorted" and not supported by substantial evidence because it included sales of Istanbul properties in addition to properties in lesser developed regions. *Id.* at 1252-53. The CIT similarly rejected Commerce's used of a land benchmark in *CS Wind*, faulting Commerce for "elid[ing] CS Wind's argument that the Ellis rental price in Penang is not comparable to its lease rate in Pahang due to the disparity in real estate costs between the two Malaysian jurisdictions." *CS Wind*, 2025 WL 3496986, at *5.

This case presents an even more striking problem than *Ozdemir*, in which Commerce included higher-value properties in Istanbul amidst a broader basket of transactions. *Ozdemir*, 273 F. Supp. 3d. 1252-53. Here, by contrast, Commerce relied *solely* on data from the higher-developed, suburban Istanbul market of Cerkozkov, a high-rent suburb on the European side of Istanbul. *See Steel Concrete Reinforcing Bar from the Republic of Turkey: Draft Results of Redetermination on Remand*, Court No. 23-00131; Slip Op. 24-116 (Dep't Commerce Dec. 16, 2024); *Remand Order* at Appx8; See Kaptan Benchmark Submission, Exhibit 2 ("Per Capita GDP Analysis - Tekirdağ vs Trabzon") at Appx357.The Colliers Review does not take into account *any* transactions from more remote and less developed markets such as Trabzon, the location of the actual Nur lease at issue. *See Colliers Review, Appx192-194.* Instead it relies solely on Greater Istanbul data the CIT found to be distortive

even to include as part of a broader basket of transactions. *See Ozdemir*, 273 F. Supp. 3d. 1252-53.

Even Commerce acknowledged that "[t]he Colliers report does not contain an explanation of how other provinces are affected by the Istanbul market, or, relatedly, a quantification of ow various factors, such as gross domestic product (GDP), distance from the center of Istanbul, or level of development of the property, affect rental rates." *See Final Redetermination Results*, at Appx125. In other words, an analysis of the Istanbul market tells you nothing about a market located around 750 miles away, in a less developed area of the country. *Id.* Use of the Colliers Review should therefore be rejected as the Istanbul market analysis contained in it is not something "a reasonable mind might accept as adequate to support a conclusion" *Nippon Steel Corp.*, 337 F.3d at 1379, of the value of theNur leasehold in Trabzon.

ii.     **The Colliers Review is not a valuation and cannot be used to value real estate values, particularly in a distant province 750 miles from the focus of the Review.**

In addition to covering the wrong area – Istanbul instead of Trabzon – the Colliers Reviewis really a marketing tool for Colliers, not an actual valuation of land values. We know this from the disclaimer in the report itself:

> This report gives information based primarily on Colliers International data, which may be helpful in anticipating trends in the property sector. However, no warranty is given as to the accuracy of, and no liability for negligence is accepted in relation to, the forecasts, figures or conclusions contained in this report *and they must not be relied on for investment or any other purposes. This report does not constitute and*

*must not be treated as investment or valuation advice or an offer to buy or sell property.*

Colliers Review, at Appx204. Emphasis added.

Commerce and CIT brushed aside this limitation on the Colliers Review and the data contained in it. Both argued that the disclaimer of liability was not at issue and, therefore, not relevant to Commerce or CIT's evaluation. *See Final Redetermination Results*, at Appx122. The waiver of liability, however, is not the relevant part of the disclaimer and is simply a red herring used by Commerce to avoid the true issue: Colliers itself says the data is not reliable for valuation purposes.

The key point of the disclaimer is that the Colliers Review itself states that it "must not be treated as . . . valuation." Colliers Review, at Appx204. But that is precisely how Commerce used it – as a valuation. And Commerce did not simply include the Colliers Review as one of many sources for finding a value; it used the report as the *sole* source of valuation to impose over $1 million worth of countervailing duties. *See Final Redetermination Results*, at Appx128-129. The Colliers Review itself states that the report should not be – in fact, cannot be – used for that purpose. Colliers Review, at Appx204.

The reasons why the Colliers Review states that it cannot be used as a valuation document are also clear from the document itself: 1) it is not based on the type of data that would be required to perform a true valuation; and 2) it does not purport to follow any industry valuation standard.

### a. The Colliers Review does not meet the substantial evidence test because it does not disclose its underlying data, rendering it unreliable.

That Colliers disclaimer states that the Review is "based primarily on Colliers International data." Colliers Review, at Appx204. The industrial rental values for Cerkozkoy used by Commerce simply state "Sources: Colliers International" in support of the pricing. *Id.* at Appx192, 194. The Review is not even meant to be a broad-based valuation of rental values in Greater Istanbul; it simply provides an indication of "trends in the property sector" based on inhouse data. *Id.* at Appx204. In fact, the true purpose of the report is made even clearer from the final page, stating "for more information" to contact a particular individual regarding "valuation and advisory services" and another for "marketing & PR." *Id.*

The Colliers Review is therefore not meant to provide a meaningful valuation of even real estate prices in Greater Istanbul. It is intended to indicate general familiarity with the Greater Istanbul market and to generate business for Colliers.

That is not to say that Colliers would be incapable of generating an actual valuation report. It plainly would but also recognized that the marketing material on which Commerce and CIT relied should not, and cannot, be used for that purpose.

Federal courts often reject expert valuation reports when the expert either does not sufficiently disclose the underlying data used to calculate value or where the underlying data are objectively unreliable. *See, e.g., Cayuga Indian Nation of New*

*York v. Pataki*, 83 F. Supp. 2d 318, 324 (S.D.N.Y. 2000) ("Obviously, to the extent the sales data used in the first step of this process is inaccurate, it significantly impacts all subsequent calculations upon which it is based. . . . [B]ecause the reliability of Havemeyer's data is uncertain, the reliability of his fair market value in any given year, based upon that data, strongly suggests that his appraisal may potentially suffer from a significant rate of error."); *Water Pollution Control Auth. of City of Norwalk v. Flowserve US Inc.*, No. 14-CV-00549, 2018 WL 1525709, at *17 (D. Conn. March 28, 2018), *aff'd*, 782 Fed. Appx. 9 (2d Cir. 2019) (excluding an expert's opinion due to the expert's "failure to disclose the calculations and data on which her opinions are based"); *Old Gate Partners, LLC v. Paddock Enterprises, LLC*, 2024 WL 3520168, at *11 (D. Conn. May 30, 2024) (rejecting a valuation report for failure to disclose the underlying data used).

The only thing we know about the data used by Colliers is that it relates to Greater Istanbul and not Trabzon, 750 miles away. The Review does not disclose any information about other transactions on which it is based, whether those transactions are even from the Cerkezkoy area, or the type of industrial property valued. It is therefore not something "a reasonable mind might accept as adequate to support a conclusion" because, quite literally, it provides no data on which to support a conclusion. *Nippon Steel Corp.*, 337 F.3d at 1379.

**b. The Colliers Review is unreliable and not supported by substantial evidence because it does not disclose the method by which the rent values were calculated.**

Even if the Colliers Review were based on objectively reliable data – which it is not – it must still be rejected because it does not disclose *any* information regarding the methodology used to arrive at rental values. *See, e.g., United States v. Guo*, 23 Cr. 118, 2024 WL 2262706, at *9 (S.D.N.Y. May 17, 2024) ("Without any description of Dragon's methodology or conclusions, the Court cannot be certain of the reliability of Dragon's approach, and the Government cannot properly cross-examine Dragon regarding his assumptions, conclusions, or even his arithmetic. Accordingly, Dragon shall not testify as to the Income and Market Methods."); *24/7 Records, Inc. v. Sony Music Ent., Inc*., 514 F. Supp. 2d 571, 576 (S.D.N.Y. 2007) (precluding a valuation opinion where the expert did not "explain how he valued [certain] factors nor how he assessed their relative significance").

Unlike the Cushman & Wakefield Report, the Colliers Review does not explain how it generated rental values in Cerkezkoy from whatever underlying data it analyzed. *See* Colliers Review, Appx194. We simply do not know whether Colliers made any adjustments based on inflation, differences in value based on property type, or differences in value based on lease terms. All we have is two numbers – 17 TL/m2 for Q2 2020 and 19 TL/m2 for Q4 2020 – with no explanation of how those numbers were calculated or derived. *See Id*. Accordingly, the Colliers Review does

not provide any basis on which a person could reasonably conclude the value of property in Cerkozkoy, let alone Trabzon 750 miles away, and must be rejected. *Nippon Steel Corp.*, 337 F.3d at 1379.

## B. The CIT and Commerce's Rejection of the Cushman & Wakefield Report is not Supported By Substantial Evidence.

Despite presenting a detailed analysis of rental values in Trabzon, the location of the Nur Leasehold, C&W Report at Appx222-238, the CIT and Commerce gave no zero weight to the Cushman & Wakefield Report, relying instead on marketing material discussing land values in a suburb of Istanbul located 750 miles away from the Nur Leasehold. Commerce's justification for doing so is a preference for independent valuations rather than those generated for use in litigation. *See Final Redetermination Results*, at Appx125. The CIT accepted this reasoning and affirmed Commerce's complete disregard of the Cushman & Wakefield Report and the data contained therein. Slip Op. 25-130, Appx46-47 21-22 ("Analyzing both reports, Commerce found that the C&W report bore higher risk of litigation-inspired fabrication because it was commissioned by Kaptan shortly before these proceedings, and Commerce found that the Colliers report data was more contemporaneous with the period in which Nur acquired the lease, and thus likely more reliable.").

### i. Rejection of the Cushman & Wakefield Report for including data from 2021 and 2022 adjusted for inflation is not supported by substantial evidence.

Describing the Colliers Review as "more contemporaneous" than the Cushman & Wakefield Report because the Cushman & Wakefield Report included some data from 2022 is not supported by substantial evidence. The Colliers Review discusses trends in Greater Istanbul real estate for the second half of 2020 but does not disclose the underlying data on which such trends are based. Colliers Review, at Appx192. For all we know, the prices contained in the Colliers Review for the Cerkozkoy could be from a single transaction from a year other than 2020 – we simply have no idea what data was used to generate those values. *Id.* at Appx192, 206. In fact, Colliers Review includes some indications that it is based at least in part on data from 2021. The Review is not signed or dated but was prepared at some point in 2021, as it indicates at various places in the report that it is based on ", as of 12th February 2021," *See* Colliers Review, at Appx186-187, and the copyright on the final page indicates that it was copyrighted in 2021. *Id.* at Appx204.

The Cushman & Wakefield Report, by contrast, lists the exact transactions and data on which it is based. Appx235-237. The pricing was determined from disclosed transactions from 2020 through early 2022. *Id*. Cushman & Wakefield then made appropriate adjustments to the 2021 and 2022 pricing, using commonly accepted methodology in the valuation industry, to account for inflation and changes in pricing. C&W Report, at Appx237.

It is therefore impossible to say that the Colliers Review is more contemporaneous than the Cushman & Wakefield Report, as we do not know the source of the trend analysis contained in it, we have no idea the data that it is based on, and any differences in years analyzed are trivial at best as the Cushman & Wakefield Report includes data from 2020-2022. Appx235-237. Additionally, because the Colliers Review does not disclose any source data or methodology, it is literally impossible to evaluate whether whatever source data was used accurately reflects prices in 2020, even for Greater Istanbul.

        ii.     **The record contains no evidence – substantial or otherwise – showing the Cushman & Wakefield Report is a "litigation-inspired fabrication.**

Neither Commerce nor the CIT pointed to any evidence of "litigation-inspired fabrication." Slip Op. 25-130, at Appx46-47. That is a very serious accusation – quite literally accusing the internationally respected company Cushman & Wakefield of lying about the rental value of land in Trabzon, Turkey on behalf of a single client. And in support of this accusation – which would border on perjury if true – Commerce and CIT simply point to the fact that Kaptan commissioned the report. *Id.* The record does not contain *any* evidence that the Cushman & Wakefield Report misrepresented or minimized the land values in Trabzon, for litigation purposes or otherwise. Accordingly, this entire line of argument should be rejected as not

supported by even a scintilla of evidence, let alone substantial evidence. *Nippon Steel Corp.*, 337 F.3d at 1379.

The actual evidence in the record establishes that the Cushman & Wakefield Report is both independent and reliable as it follows industry valuation standards. *See Lickteig v. Cerberus Cap. Mgmt., L.P.,* 589 F. Supp. 3d 302, 332 (S.D.N.Y. 2022) (permitting reliance on standard valuation methodologies where it was clear that the expert "applied such industry-standard valuation methodologies");The Cushman & Wakefield Report was made in accordance with the RICS Valuation Standards, current edition ("RICS Red Book"), C&W Report at Appx217, a copy of which was in the administrative record. Kaptan Benchmark Report at Exhibit 3, Appx361. Cushman & Wakefield also set forth the other property transactions it used to calculate the value of the Nur leasehold and set forth, described the calculations used, and described how it adjusted the 2022 data to determine 2020 values. C&W Report, at Appx236-239. Finally, the Report discussed the specifics of the actual Nur leasehold, including the details of the lease agreement and a description of the economy in the surrounding area of Trabzon. *Id.* at Appx222-229.

In the proceedings below, neither Commerce nor the CIT took issue with the data on which Cushman & Wakefield relied or the methodology Cushman & Wakefield used to perform the valuation. *See, e.g.*, Slip Op. 25-130, at Appx46-47.

Similarly, neither took issue with the RICS Valuation Standards or claimed that Cushman & Wakefield failed to follow those industry-leading standards. See *Id.*

Commerce and the CIT therefore failed to support the conclusion that the Cushman & Wakefield Report was a "litigation-inspired fabrication" with any evidence, let alone substantial evidence. The CIT's decision to affirm Commerce's rejection of the Cushman & Wakefield Report should therefore be reversed.

### C. The Cushman & Wakefield Report Is the *Only* Evidence in the Record of the Value of the Nur Leasehold in Trabzon.

Contrary to CIT and Commerce's framing of this issue, this is simply not a case "[w]here Commerce must choose between two imperfect valuation reports." Slip Op. 25-130, at Appx45. Only one report – the Cushman & Wakefield Report – even attempts to value the Nur Leasehold. C&W Report, at Appx235-239. And only one report – the Cushman & Wakefield Report –analyzes the value of the actual land at issue, located in Trabzon. *Id*. at Appx240. This is therefore not a case of two reasonable, competing valuation reports. It is a case of one valuation report analyzing the actual land at issue, albeit commissioned by an interested party, and marketing material setting forth general information about land values in a megalopolis located 750 miles away on a different continent.

In fact, Trabzon is physically closer to the Asian countries of Iran, Georgia, and Armenia than it is to Greater Istanbul, the sole focus of the Colliers Review. And the suburban Istanbul city of Cerkezkoy is far closer to the European countries of

Greece, Macedonia, and even Romania than it is to Trabzon. Even Commerce admits that the Colliers Review says nothing about the land values in distant provinces such as Trabzon or their relationship to the Greater Istanbul market that is somewhat analyzed by Colliers. *See Final Redetermination Results*, at Appx125.)

Commerce has done the equivalent of using a report of land values in Midtown Manhattan and applying them to subsidized property in Wichita Falls, Kansas or Brunswick, Georgia. And in the process, rejecting reports that actually analyze – and value – the subsidized property in Wichita Falls, Kansas or Brunswick, Georgia.

Commerce's attempt to justify using land values in Cerkezkoy for a lease in Trabzon also fails. It argued that of the eight areas of Greater Istanbul included in the Colliers Review, Cerkezkoy is the most similar to the undeveloped, reclaimed land in Trabzon at issue. *See Final Redetermination Results*, at Appx128-129. But that's like using data from Staten Island to value a lease in Idaho because of the Five Boroughs, Staten Island is the least densely populated and therefore *most* similar to Idaho. It might be more similar to the land in question than the other choices, but still has almost no relationship to it. And it certainly should not be selected over a valuation report from an internationally respected firm, using standard valuation metrics, to determine the value of the actual land at issue.

This is therefore not a case of two competing, but reasonable, reports. Accordingly, Commerce's use of the Colliers Review must be rejected and the case remanded for calculation of the CVD duty using the Cushman & Wakefield Report. *CS Wind*, 2025 WL 3496986, at *5.

## CONCLUSION

Based on the foregoing, Plaintiff-Appellant Kaptan respectfully requests the CIT's judgment be reversed and remanded for calculation of the CVD margin using only the Cushman & Wakefield Report.

Respectfully submitted,

/s/ Daniel L. Delnero

Daniel L. Delnero
Allen W. Yee
**BGD LEGAL & CONSULTING, LLC**
3017 Bolling Way - Suite 130
Atlanta, GA 30305

*Counsel to Plaintiff-Appellant Kaptan*
*Demir Celik Endustrisi ve Ticaret A.S.*

Dated: February 9, 2026

# CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B).

2.     This brief contains 6616 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f) and Federal Rule of Appellate Procedure 32(b)(2).

3.     This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the typestyle requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word in Times New Roman 14-point font.


Dated: February 9, 2026          /s/ Daniel L. Delnero

                                 Daniel L. Delnero
                                 Allen W. Yee
                                 **BGD LEGAL & CONSULTING, LLC**
                                 3017 Bolling Way NE, Suite 130
                                 Atlanta, GA 30305
                                 Email: daniel.delnero@bgdlc.com

                                 ***Counsel to Plaintiff-Appellant Kaptan***
                                 ***Demir Celik Endustrisi ve Ticaret A.S.***

# ADDENDUM OF REQUIRED DOCUMENTS

| Tab No. | Document | Pages |
|---------|----------|-------|
| 1 | *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, Slip Op. 25-130 (CIT, Oct 6, 2025) | Appx001-023 |
| 2 | *Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States*, Judgment (CIT, Oct 6, 2025) | Appx024 |

Slip Op. 25 - 130

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **KAPTAN DEMIR CELIK ENDUSTRISI VE TICARET A.S.,** | |
| **Plaintiff,** | |
| and | |
| **ICDAS CELIK ENERJI TERSANE VE ULASIM SANAYI, A.S.,** | |
| **Plaintiff-Intervenor,** | **Before: Gary S. Katzmann, Judge** |
| v. | **Court No. 23-00131** |
| **UNITED STATES,** | |
| **Defendant,** | |
| and | |
| **REBAR TRADE ACTION COALITION,** | |
| **Defendant-Intervenor.** | |

## OPINION AND ORDER

[Commerce's Remand Results are sustained.]

Dated: October 6, 2025

David L. Simon, Law Office of David L. Simon, PLLC, of Washington, D.C., argued for Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S.

Leah N. Scarpelli and Matthew M. Nolan, ArentFox Schiff LLP, of Washington, D.C., for Plaintiff-Intervenor Icdas Celik Enerji Tersane ve Ulasim Sanayi, A.S.

Collin T. Mathias, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant the United States. With him on the briefs were Brett A. Shumate, Assistant Attorney General, Yaakov M. Roth, Acting Assistant Attorney General, Patricia M. McCarthy, Director, Franklin E. White Jr., Assistant Director. Of counsel on the briefs were W. Mitch Purdy, Senior Attorney and Heather A. Holman, Senior Attorney, Office

Court No. 23-00131                                                              Page 2

of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Maureen E. Thorson, Wiley Rein, LLP, of Washington, D.C., argued for Defendant-Intervenor Rebar Trade Action Coalition.  With her on the brief were Alan H. Price, John R. Shane, Stephanie M. Bell, and Stephan A. Morrison.

      Katzmann, Judge: In an odyssey filled with twists and turns, Plaintiff Kaptan Demir Celik Endustrisi ve Ticaret A.S. ("Kaptan") and Defendant the United States (the "Government") have differed in a series of proceedings about countervailing duties imposed on Turkish rebar.[1]  This chapter of the epic involves the U.S. Department of Commerce's ("Commerce") 2023 administrative review of the 2020 countervailing duty order.  See Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2020, 88 Fed. Reg. 34129 (Dep't Com. May 26, 2023), P.R. 156 ("Final 2020 Order").  In the Final 2020 Order, Commerce determined that an exemption from Turkey's Banking and Insurance Transactions Tax ("BITT") on foreign exchange transactions was a countervailable subsidy because the BITT exemption was specific as a matter of law.  See Mem. from J. Maeder to L. Wang, re: Issues and Decision Memorandum for the Final Results of the Countervailing Duty Administrative Review of Steel Concrete Reinforcing Bar from the Republic of Turkey; 2020, at 11, (Dep't Com. May 22, 2023), P.R. 152 ("2020 IDM").  It also identified a report prepared by Colliers International ("Colliers") as a more appropriate benchmark to value rent-free lease of land than a competing report prepared by Cushman & Wakefield ("C&W").  Id. at 10.

---

[1] Rebar is a steel rod that is embedded into concrete to strengthen a concrete structure.  Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 47 CIT __, __ n.1, 666 F. Supp. 3d 1334, 1336 n.1 (2023).

Court No. 23-00131                                                                                          Page 3

     The court remanded these determinations to Commerce for further explanation in <u>Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States</u>, 48 CIT __, 736 F. Supp. 3d 1318 (Oct. 21, 2024) ("<u>Remand Order</u>").  In the <u>Remand Order</u>, the court found Commerce's explanation for its finding of specificity to be inconsistent with the requirements of de jure specificity and remanded to Commerce for further explanation, inviting Commerce to evaluate whether the exemption met the requirements for de facto specificity instead.  <u>Id.</u> at 1329.  The court also remanded to Commerce the choice of the Colliers report to value the rent-free lease of Kaptan's affiliate Nur to "fully address the arguments presented by Kaptan regarding possible deficiencies in the Colliers report and, if appropriate, to reconsider its selection of the Colliers report over the C&W report as a benchmark." <u>Id.</u> at 1333.

     On January 21, 2025, Commerce filed its redetermination of the <u>Final 2020 Order</u>.  <u>See Final Results of Remand Redetermination Pursuant to Court Remand</u>, Jan. 21, 2025, ECF No. 53 ("<u>Remand Results</u>").  In the <u>Remand Results</u>, Commerce determined that the BITT exemption was not a countervailable subsidy because the BITT exemption was not specific, and Commerce further explained the decision to use the Colliers report instead of the C&W report to value the Nur lease. <u>See id.</u> at 11–12.  Now Defendant-Intervenor Rebar Trade Action Coalition ("RTAC") challenges Commerce's redetermination that the BITT exemption is not specific.  <u>See</u> Def.-Inter.'s Cmts. in Opp'n to Remand Redetermination, Feb. 20, 2025, ECF No. 59 ("Def.-Inter.'s Cmts.").  Plaintiff Kaptan continues to challenge the adequacy of Commerce's explanation of its decision to use the Colliers report to value the Nur lease.  <u>See</u> Kaptan's Cmts. on Redetermination on Remand, Feb. 20, 2025, ECF No. 58 ("Pl.'s Cmts.").

     The court sustains both of Commerce's determinations in the <u>Remand Results</u>.

Court No. 23-00131                                                                Page 4

## BACKGROUND

### I.     Legal and Regulatory Framework

The Tariff Act of 1930 provides a mechanism to level the playing field in international trade by empowering Commerce to impose remedies that combat unfair trade practices.  See LA Molisana S.p.A v. United States, 138 F.4th 1353, 1355 (Fed. Cir. 2025).  One remedy that Commerce may impose to offset the effects of countervailable foreign subsidies—one such unfair trading practice—is a countervailing duty.  19 U.S.C. § 1671.  In order to impose a countervailing duty on merchandise, Commerce must determine that the foreign government provides "a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported . . . ."  Id. § 1671(a)(1).  Such subsidies may take the form of a foreign government's provision of "goods or services [that] are provided for less than adequate remuneration" or "foregoing or not collecting revenue that is otherwise due, such as granting tax credits or deductions from taxable income."  Id. § 1677(5)(D)(ii), (E)(iv).  In articulating the requirements for countervailability, the Tariff Act of 1930 requires that Commerce find a subsidy to be "specific" before imposing a countervailing duty on imports to offset the subsidy.  Id. § 1677(5)(A), (5A).  A subsidy may be specific either in law (de jure) or in fact (de facto).  Id. § 1677(5A)(D).  As the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") recently explained, "[t]he de jure specificity inquiry is separate from the de facto inquiry and the two are based on different factors."  Gov't of Quebec v. United States, 105 F.4th 1359, 1374 (Fed. Cir. 2024).

Commerce's regulations provide a detailed framework for assessing "adequate remuneration":

Court No. 23-00131                                                                                    Page 5

> The Secretary will normally seek to measure the adequacy of remuneration by comparing the government price to a market-determined price for the good or service resulting from actual transactions in the country in question. Such a price could include prices stemming from actual transactions between private parties or actual imports. In choosing such transactions or sales, the Secretary will consider product similarity; quantities sold or imported; and other factors affecting comparability.

19 C.F.R. § 351.511(a)(2)(i).

## II.     *History of Relevant Administrative Proceedings*

The current remand is just one chapter in Kaptan's challenges to Commerce's Turkish rebar countervailing duties orders. Commerce first issued a countervailing duty order on rebar from Turkey in 2014, see Steel Concrete Reinforcing Bar From the Republic of Turkey: Countervailing Duty Order, 79 Fed. Reg. 65926 (Dep't Com. Nov. 6, 2014) ("Original Order"), and Commerce ordered the assessment of countervailing duties on Kaptan's U.S. imports of rebar following its 2018, 2019, 2020, and 2021 administrative reviews of the Original Order. See Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2018, 86 Fed. Reg. 53279 (Dep't Com. Sept. 27, 2021) ("Final 2018 Review"); Steel Concrete Reinforcing Bar From the Republic of Turkey: Final Results of Countervailing Duty Administrative Review and Rescission, in Part; 2019, 87 Fed. Reg. 21,640 (Dep't Com. Apr. 12, 2022) ("Final 2019 Review"); Final 2020 Order; Steel Concrete Reinforcing Bar From the Republic of Türkiye: Final Results of Countervailing Duty Administrative Review; 2021, 89 Fed. Reg. 35,071 (Dep't Com. May 1, 2024) ("Final 2021 Review"). Kaptan has challenged each of these administrative review determinations in separate actions.

In response to the Final 2018 Review, Kaptan challenged Commerce's decision to treat Nur—a shipbuilding company that provided scrap metal for Kaptan's operations—as a

Court No. 23-00131                                                                      Page 6

cross-owned input supplier for Kaptan, and the court remanded that determination to Commerce

in Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 47 CIT __, 633 F. Supp. 3d

1276 (2023) ("Kaptan I").   The court subsequently entered judgment sustaining Commerce's

determination on remand that subsidies conveyed to Nur were not properly classified as indirect

subsidies to Kaptan.   Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, 47 CIT __,

666 F. Supp. 3d 1334, 1336 ("Kaptan I Remand").   RTAC filed an appeal of that decision in the

Federal Circuit.   See Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, appeal

docketed, No. 24-1431 (Feb. 2, 2024).

        Subsequently, Kaptan challenged Commerce's Final 2019 Review on grounds similar to

those at issue in Kaptan I, and the court stayed that proceeding pending resolution of Kaptan I.

See Order Staying Case, Kaptan Demir Celik Endustrisi ve Ticaret A.S. v. United States, No.

22-00149 (Ct. Int'l Trade July 17, 2024), ECF No. 63 ("Kaptan II").

        In the instant case, Kaptan challenged Commerce's Final 2020 Order, and the court

remanded both challenged aspects of the review to Commerce for further explanation.   See

Remand Order, 736 F. Supp. 3d at 1321–22.   Kaptan separately challenged Commerce's Final

2021 Order in a case that is pending before this court.   See Kaptan Demir Celik Endustrisi ve

Ticaret A.S. v. United States, No. 24-00096 ("Kaptan IV").

### III.    *Factual Background*

        The court presumes familiarity with the factual history of the administrative proceeding

leading up to the Remand Order.   Commerce released its draft remand redetermination on

December 16, 2024, and received comments from interested parties on December 27, 2024.

Remand Results at 20.   Pursuant to the court's remand order, and without requesting an extension,

Commerce published the Remand Results on January 21, 2025.   Remand Results.   In the Remand

Court No. 23-00131                                                                 Page 7

Results, Commerce found under protest that the BITT exemption was not specific, and it offered

further explanation for its decision to use one land valuation report over another to value the free

rent subsidy that Nur received.  Id. at 2.

### IV.     Procedural History

On February 20, 2025, Kaptan filed its comments on the Remand Results, challenging the

adequacy of Commerce's explanation of its decision to use one report over the other.  See Pl.'s

Cmts.   Plaintiff-Intervenor Icdas Celik Enerji Tersane ve Ulasim Sanayi A.S. ("Icdas")[2]

incorporated Kaptan's arguments.  See Pl.-Inter.'s Cmts. in Opp'n to Remand Results, Feb. 20,

2025, ECF No. 61.  RTAC filed its comments on the Remand Results on February 20, contesting

Commerce's under-protest determination that the BITT exemption was not specific.   See

Def.-Inter.'s Cmts.  In early April, the Government filed a response to Kaptan's and RTAC's

comments.  See Def.'s Resp. to Cmts. on Remand Results, Apr. 7, 2025, ECF No. 65 ("Gov't

Resp.").  On April 5, 2025, Kaptan filed comments in support of Commerce's determination in the

remand that the BITT exemption was not specific.  See Pl.'s Reply Cmts. on Remand Results, Apr.

5, 2025, ECF No. 64.  On April 7, 2025, RTAC filed comments in support of Commerce's decision

in choosing which land valuation report to use.  See Def-Inter.'s Reply Cmts., Apr. 7, 2025, ECF

No. 66.  On June 24, 2025, the court posed a set of initial questions to Kaptan, RTAC, and the

Government.  See Letter re: Qs. for Oral Arg., June 24, 2025, ECF No. 71.  All parties submitted

responses to the questions on July 1, 2025, and the court held oral argument on July 8, 2025.  See

Def.'s Resp. to Court's Qs. for Oral Arg., July, 1, 2025, ECF No. 72 ("Gov't OAQ Resp."); Pl.'s

Resp. to Court's Qs. for Oral Arg., July, 1, 2025, ECF No. 73 ("Pl.'s OAQ Resp."); Def.-Inter.'s

---

[2] Icdas is also a Turkish producer-importer of rebar that is subject to countervailing duties pursuant
to the Final 2020 Review.  Remand Order, 736 F. Supp. 3d at 1321 n.2.

**APPX007**

Court No. 23-00131                                                                 Page 8

Resp. to Court's Qs. for Oral Arg., July, 1, 2025, ECF No. 74 ("Def-Inter.'s OAQ Resp.").  The

court invited the parties to submit supplemental comments following oral argument, and Kaptan

filed a brief on July 21, 2025.  See Pl.'s Post-Arg. Br., July 21, 2025, ECF No. 76.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C.

§ 1516a(a)(2).  The standard of review in this action is set forth in 19 U.S.C. § 1516a(b)(l)(B)(i):

"[t]he court shall hold unlawful any determination, finding, or conclusion found . . . to be

unsupported by substantial evidence on the record, or otherwise not in accordance with law . . . ."

"The court will sustain Commerce's redetermination on remand if it is supported by substantial

evidence on the record and is otherwise in accordance with law . . . , which includes compliance

with the court's remand order."  SMA Surfaces, Inc. v. United States, 47 CIT __, __, 658 F. Supp.

3d 1325, 1328 (2023) (internal citation omitted).

In making any determination, Commerce is required to provide "an explanation of the basis

for its determination that addresses relevant arguments, made by interested parties who are parties

to the investigation or review . . . ."  19 U.S.C. § 1677f(i)(3)(A).  Commerce's explanation should

account for "contradictory evidence or evidence from which conflicting inferences could be

drawn."  Suramerica de Aleaciones Laminadas, C.A. v. United States, 44 F.3d 978, 985 (Fed. Cir.

1994) (internal quotation marks and citation omitted).

## DISCUSSION

RTAC challenges the Remand Results on the issue of specificity, contending (1) that

Commerce's redetermination that the BITT exemption did not constitute a de jure specific subsidy

lacked substantial evidence, (2) that Commerce erred in declining to conduct a more thorough

investigation to determine whether the BITT exemption was de facto specific, and (3) that

Court No. 23-00131                                                          Page 9

Commerce failed to provide substantial evidence to support its decision not to apply adverse

inferences.  See Def-Inter.'s Cmts. at 4–10.  Kaptan challenges the <u>Remand Results</u> on the issue

of the selection of the land valuation report benchmark, contending: (1) that Commerce's decision

to use the Colliers report instead of the C&W report was not grounded in substantial evidence, and

(2) that Commerce failed to address relevant comments Kaptan raised about the adequacy of the

Colliers report.  See Pl.'s Cmts. at 6–27.

> ### I.   *Commerce Offered Substantial Evidence to Support Its Finding that the BITT Exemption Did Not Constitute a Specific Subsidy*

Recall that a subsidy must be specific to be countervailable.  A subsidy may be specific as

a matter of law, "[w]here the authority providing the subsidy, or the legislation pursuant to which

the authority operates, expressly limits access to the subsidy to an enterprise," 19 U.S.C.

§ 1677(5A)(D)(i), or as a matter of fact, where one of the following four factors is met:

> (I) The actual recipients of the subsidy, whether considered on an enterprise or industry basis, are limited in number.  (II) An enterprise or industry is a predominant user of the subsidy.  (III) An enterprise or industry receives a disproportionately large amount of the subsidy.  (IV) The manner in which the authority providing the subsidy has exercised discretion in the decision to grant the subsidy indicates that an enterprise or industry is favored over others.

<u>Id.</u> § 1677(5A)(D)(iii).

In the <u>Final 2020 Order</u>, Commerce found that Kaptan's exemption from the BITT was a

countervailable subsidy because it viewed the law providing the exemption as de jure specific.

Under Turkish Law 6802, five types of transactions are eligible for an exemption from the BITT:

> (1) foreign exchange sales between banks and authorized institutions or among each other; (2) foreign currency sales that are made to the Ministry of Treasury and Finance; (3) foreign currency sales made to corporate borrowers having foreign currency loan payables; (4) foreign exchange sales to enterprises having an industrial registry certificate; and, (5) foreign exchange sales to exporters which are members of Exporters' Associations.

Court No. 23-00131                                                                Page 10

Remand Results at 3 (citing Letter from Republic of Turkiye, Ministry of Trade to Sec'y of Com.,

re: Resp. to Sec. II of the Questionnaire in 2020 Administrative Review of the Countervailing Duty

Order on Steel Concrete Reinforcing Bar from Turkiye at 76–77, (May 16, 2022), P.R. 49).[3]

      Commerce, in the Final 2020 Order, found that the exemption was de jure specific because

the exemption was limited to "a cross-section of companies that fulfill one of the five requirements

and make foreign exchange transactions."  Remand Results at 8–9 (citing Mem. from J. Maeder

to L. Wang, re: Issues and Decision Memorandum for the Final Results of the Countervailing Duty

Administrative Review of Steel Concrete Reinforcing Bar from the Republic of Turkey; 2020 at

12, (Dep't Com. May 22, 2023), P.R. 152 ("2020 IDM")).  Notably, many industries appear to be

required to possess industrial registry certificates—the fourth category for BITT exemption

qualifications.  Remand Order, 736 F. Supp. 3d at 1327–28.  Yet Commerce concluded that the

number of companies that fulfilled one of the requirements for the exemption in practice was

limited, as only a handful of industries actually possessed industrial registry certificates.  Id. at

1329 (citing 2020 IDM at 12).  Thus, in the Final 2020 Order Commerce found the BITT

exemption to be de jure specific.  Id

      However, the court held in its Remand Order that to support a finding of de jure specificity

with substantial evidence:

> the record must demonstrate that Turkish law 'expressly limits' the BITT
> Exemption 'to an enterprise or industry' . . . . The provisions of Turkish law in the
> record, on which Commerce relied, do not appear to expressly limit the BITT
> Exemption to an 'enterprise or industry.' . . . Their express terms instead appear to
> support a conclusion of broad, economy-wide eligibility for the subsidy.

Remand Order, 736 F. Supp. 3d at 1327 (quoting 19 U.S.C. § 1677(5A)(D)(i)).  The court thus

---

[3] "P.R" refers to the index numbers of public documents in the joint appendix for the Remand
Order case.

Court No. 23-00131                                                                 Page 11

remanded the issue to Commerce for further explanation, inviting Commerce to consider whether the exemption may have been de facto specific instead.  Id. at 1330.  In the Remand Results, Commerce determined, under protest, that the BITT exemption did not constitute a de jure specific subsidy.  Remand Results at 9.

During the remand proceeding, Commerce issued additional questionnaires to the Government of Turkey to investigate whether the BITT exemption was specific as a matter of fact. The Government of Turkey did not respond to many of the questions, stating that it lacked information or that the questions were irrelevant.  Id. at 10–11; Def-Inter.'s Br. at 2.  In such instances where "necessary information is not available on the record, or an interested party or any other person withholds information that has been requested" by Commerce, the agency "shall . . . use the facts otherwise available in reaching the applicable determination . . . ."  19 U.S.C. § 1677e(a).  To fill the gaps, Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available."  Id. § 1677e(a)–(b). Using the limited information it had available and deciding not to apply adverse inferences for the information that the Government of Turkey failed to provide, Commerce found that the BITT exemption was not de facto specific.  Remand Results at 11–12.

RTAC challenges Commerce's determinations that the BITT exemption is neither a de jure nor de facto specific subsidy.

### A.    De Jure Specificity

RTAC challenges Commerce's redetermination on remand that the BITT exemption is not de jure specific because "Turkish law explicitly limits exemptions from the BITT to firms that conduct foreign operations requiring legitimate, non-speculative foreign currency transactions," and the facts available indicate that the industrial registry certificate is not widely available,

Court No. 23-00131                                                                 Page 12

suggesting that the BITT exemption itself is not widely available.  Def-Inter.'s Br. at 4.  RTAC

argues that Commerce has failed to "address relevant arguments," including those "material to the

agency's determination," and requests that the court remand this issue to Commerce.  Id. at 6

(citing <u>Timken U.S. Corp. v. United States</u>, 421 F.3d 1350, 1354 (Fed. Cir. 2005)).  Because

RTAC's arguments that the BITT exemption is de jure specific reflect reasoning that the court

already rejected in the <u>Remand Order</u>, the court sustains Commerce's determination as to de jure

specificity.

RTAC argues that the BITT exemption is de jure specific because eligibility criteria for the

exemption—notably, the exemption via industrial registry certificate—is, in practice, limited to a

small number of industries.  Def-Inter.'s OAQ Resp. at 6.  RTAC claims that, "the record evidence

regarding other aspects of the five criteria [to receive the BITT exemption]—most critically, record

evidence regarding the availability of the BITT exemption to companies possessing an industrial

registry certificate . . . supported the conclusion that the BITT exemption program was de jure

specific, in that it demonstrated that industrial registry certificates were only available to, and held

by, a limited group of Turkish entities."  Id.

However, the court already evaluated a virtually identical argument in the <u>Remand Order</u>.

Faced with the questions of whether industrial registry certificates were available to only a narrow

range of industries and whether narrow availability would warrant a finding of de jure specificity

the court held as follows:

> It instead appears that under the provisions of Turkish law in the record, virtually
> every company of a certain size must possess an industrial registry certificate.  And
> because every company that complies with the legal requirement to possess an
> industrial registry certificate is eligible for the BITT Exemption, <u>see</u> Turkish Law
> 6802, legal eligibility for the BITT Exemption appears to be broad and
> non-enterprise-or industry-specific.

**APPX012**

Court No. 23-00131                                                                                    Page 13

<u>Remand Order</u>, 736 F. Supp. 3d at 1328.

Thus, contrary to RTAC's contention, the court has already held that the broad availability of the industrial registry certificate under Turkish law undercuts a determination that the BITT exemption is specific as a matter of law. In addition, the court observed that while Commerce "premised its specificity determination on the notion that even if Turkish law establishes broad eligibility for the BITT exemption . . . [t]his type of analysis, however, is out of place in a determination of whether a subsidy is specific as a matter of law." <u>Id.</u> at 1329. The only relevant questions to determine de jure specificity are those about whether the record shows the law "expressly limit[s] access to the subsidy to an enterprise or industry,' " and "not whether the implementation of that law results in the subsidy's distribution to a limited number of recipients." <u>Id.</u> (quoting 19 U.S.C. § 1677(5A)(D)(i)).

Because RTAC's arguments that the BITT exemption is specific as a matter of law echo arguments the court already rejected, Commerce did not err in rejecting those arguments in the <u>Remand Results</u>, and the court sustains Commerce's <u>Remand Results</u> with regard to the de jure specificity finding.

### B.    *De Facto Specificity*

RTAC argues that Commerce erred in its determination that the BITT exemption is not de facto specific because (1) Commerce had a statutory obligation to conduct further investigation into the de facto specificity of the BITT exemption after the Government of Turkey failed to provide certain information and (2) Commerce failed to sufficiently explain its decision not to apply adverse inferences to the gaps in the record created by the Government of Turkey's failure to provide that information. Def-Inter.'s Br. at 6–9. However, the Tariff Act grants Commerce "broad discretion in executing the [antidumping and countervailing duties] law[s]." <u>Smith-Corona</u>

Grp. v. United States, 713 F.2d 1568, 1571 (Fed. Cir. 1983).  This includes discretion to decline

to conduct further investigation or to decline to apply adverse inferences.  See Micron Tech., Inc.

v. United States, 117 F.3d 1386, 1395 (Fed. Cir. 1997) ("Commerce has the discretionary authority

to determine the extent of investigation and information it needs." (internal quotation marks

omitted)); Timken Co. v. United States, 354 F.3d 1334, 1346 (Fed. Cir. 2004) ("Commerce has

discretion to apply adverse inferences.").  See generally Borusan Mannesmann Boru Sanayi Ve

Ticaret A.S. v. Am. Cast Iron Pipe Co., 5 F.4th 1367 (Fed. Cir. 2021) (affirming a determination

of Commerce regarding post-sale price adjustment, including the decision not to apply an adverse

inference).

　　　　Commerce's discretion is bounded, as "Commerce may not act arbitrarily or unreasonably,

and may not abuse the discretion Congress has granted."  Melamine Chemicals, Inc. v. United

States, 732 F.2d 924, 930 (Fed. Cir. 1984); see also Goodluck India Ltd. v. United States, 11 F.4th

1335, 1342 (Fed. Cir. 2021) ("Commerce abuses its discretion, for instance, if it departs from a

consistent practice without reasonable explanation."); F.lli De Cecco Di Filippo Fara S. Martino

S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000) (concluding it would be abuse of

discretion for Commerce to "select unreasonably high rates with no relationship to the

respondent's actual dumping margin").  Here RTAC has failed to show that Commerce acted

unreasonably or exceeded its discretion in declining to conduct further investigation or apply

adverse inferences.

　　　　Although Commerce has a statutory duty to assess whether the BITT exemption was de

facto specific under 19 U.S.C. § 1677(5A)(D)(iii), the statute anticipates that there will be

instances in which Commerce does not have sufficient information in the record to make a

Court No. 23-00131                                                                                                      Page 15

determination.  In such instances, Commerce "shall … use the facts otherwise available in reaching

the applicable determination. . . ."  Id. § 1677e(a).  Commerce has broad discretion to decline to

conduct further investigation in antidumping and countervailing duty investigations, and the

plaintiff bears the burden of showing that Commerce abused its discretion in declining to conduct

further investigation.  See Micron Tech., 117 F.3d at 1395; Wuhu Fenglian Co. v. United States,

36 CIT 642, 836 F. Supp. 2d 1398, 1405 (2012) ("Plaintiffs' . . . argument that Commerce abused

its discretion in declining to issue each and every supplemental questionnaire that Plaintiffs had

requested is without merit."); Emerson Power Transmission Corp. v. United States, 19 CIT 1154,

1160, 903 F. Supp. 48, 54 (1995) ("While [the plaintiff] is correct to assert that Commerce may

request additional information, . . . [the plaintiff's] argument that Commerce should have

requested the information is inconsistent with Commerce's broad discretion under the antidumping

laws.").

        Here, RTAC has failed to demonstrate that Commerce's decision to not conduct further

investigation was unreasonable.  RTAC asserts that "Commerce simply declined to conduct the

analysis required by the statute, citing a lack of record evidence that was at least partially of its

own making," Def-Inter.'s Br. at 7, even though the statute clearly authorizes Commerce to rely

on "the facts otherwise available in reaching the applicable determination" when the record is

incomplete.  19 U.S.C. § 1677e(a).  RTAC does not offer an argument suggesting that Commerce

abused its discretion in declining to conduct further investigation.  See PPG Indus., Inc. v. United

States, 978 F.2d 1232, 1238 (Fed.Cir.1992).

        Commerce justified its decision not to conduct further investigation into the de facto

specificity of the BITT exemption on the grounds that:

> given the nature of the BITT program, which exempts certain entities from taxes on <u>foreign exchange transactions</u>, there may be additional bases to analyze whether the BITT program is <u>de facto</u> specific, for example whether the traded goods sector is a predominant or disproportionate user of the program pursuant to 19 CFR 351.502(c). As explained below, however, there is insufficient time to conduct a full analysis of this approach in this remand determination . . . . Going forward, Commerce intends to further examine whether this program is specific in subsequent proceedings, when Commerce has additional time to issue questionnaires and review subsequent responses on a more extensive record. For example, under 19 CFR 351.502(c), Commerce may consider whether the traded goods sector is a predominant or disproportionate user of the program. However, as explained above, for purposes of this remand, Commerce does not have the time to gather such information and do a thorough analysis in that regard, so instead is making its specificity determination based on facts otherwise available.

<u>Remand Results</u> at 12 (emphasis in original).

This explanation offered ample justification for Commerce's decision not to conduct further investigation. While there could be an endless number of ways in which a subsidy operates as specific in fact, Commerce inevitably has limited time to investigate specificity and cannot entirely exhaust each and every avenue of investigation—especially when the investigation hinges upon answers provided by a foreign government. Commerce declined to investigate the other "bases" on which the BITT exemption could be de facto specific in an effort to comply with the court's <u>Remand Order</u>, which gave agency ninety day to file its remand determination. <u>See</u> <u>Remand Results</u> at 12; <u>Remand Order</u>, 736 F. Supp. 3d at 1334.

RTAC offers no evidence to suggest that Commerce shirked its obligation to comply with the <u>Remand Order</u>. For example, RTAC does not allege that Commerce dragged its heels or that its investigation was not thorough. RTAC merely suggests that Commerce should have "request[ed] more time for the remand proceedings." Def-Inter.'s Br. at 7. Commerce, however, had no obligation here to request more time from the court so that the agency could conduct a more thorough investigation into de facto specificity.

Court No. 23-00131                                                                    Page 17

In sum, it was not an abuse of discretion for Commerce to conduct an investigation in accordance with the timeframe the court initially gave the agency in the Remand Order.  See PPG Indus., Inc., 978 F.2d at 1238; ArcelorMittal USA LLC v. United States, 43 CIT __, __, 399 F. Supp. 3d 1271, 1279–1281 (2019) ("This court has recognized that Commerce's broad discretion to set and enforce deadlines applies to remand proceedings").  This explanation sufficiently justified Commerce's decision not to conduct further investigation and to use the facts available in an incomplete record as 19 U.S.C. § 1677e(a) permits.

Likewise, the Tariff Act of 1930 grants Commerce discretion to determine whether to apply adverse inferences.  See 19 U.S.C. § 1677e(b) (Commerce "may use an inference that is adverse to the interests of [a party that has failed to cooperate] in selecting from among the facts otherwise available"); see also Timken, 354 F.3d at 1346.  The use of the word "may" in the statute indicates that Commerce has discretion to determine whether to apply adverse inferences or not.  See Doe v. United States, 463 F.3d 1314, 1324 (Fed. Cir. 2006) ("There is a presumption that the use of the word 'may' in a statute creates discretion.").  Pragmatically, it makes senses that Commerce has discretion to determine whether to apply adverse inferences, as the agency is in the best position to decide whether a party has complied to its best ability with requests and to ascertain whether adverse inferences will likely yield the most accurate results.  See F.lli De Cecco Di Filippo Fara S. Martino, 216 F.3d at 1032 ("Commerce is in the best position, based on its expert knowledge of the market and the individual respondent, to select adverse facts that will create the proper deterrent to non-cooperation with its investigations and assure a reasonable margin.").

RTAC correctly notes that Commerce's "discretion is not unbounded."  Def-Inter.'s OAQ Resp. at 2.  The court reviews Commerce's determinations to ensure the agency offered substantial

**APPX017**

evidence to explain its decision.  19 U.S.C. § 1516a(b)(l)(B)(i).  Here, RTAC alleges that "[t]he

agency's decision not to apply adverse facts available to the Government of Turkey is also

inadequately explained and supported."  Def-Inter.'s Br. at 7.

However, Commerce offered sufficient explanation for its decision not to apply adverse

inferences.   In the Remand Results, it identified "no reasonable basis to conclude that the

Government of Turkey withheld information that has been requested by Commerce" and therefore

chose not to apply adverse inferences.  Remand Results at 11.  RTAC, in turn, contends that there

was reasonable basis to conclude Government of Turkey withheld information because the

Government of Turkey responded "not applicable" to some questions (rather than stating that the

Government of Turkey did not have that information to those questions) and the Government of

Turkey failed to show that it had attempted to request those pieces of information as indications

that the Government of Turkey withheld information.  Def-Inter.'s Br. at 8–9.  However, these

pieces of evidence merely point to the Government of Turkey's failure to demonstrate that it

exhausted its ability to meet the request, rather than affirmatively showing a reasonable basis to

conclude that the Government of Turkey withheld information.  RTAC has not demonstrated that

Commerce's decision to not apply adverse inferences was unreasonable.  Absent an affirmative

case that the record demonstrated that Commerce ought to have applied adverse inferences,

Commerce's decision not to apply adverse inferences fell within its discretion.

Because RTAC has failed to demonstrate that Commerce abused its discretion in declining

to conduct further investigation or apply adverse inferences in the de facto specificity analysis, the

court sustains Commerce's Remand Results with regard to the de facto specificity finding.

**II.      *Commerce Offered Substantial Evidence to Support Its Decision to Use the Colliers Report Benchmark***

Kaptan alleges that Commerce's decision to use the Colliers report instead of the C&W report is not grounded in substantial evidence because Commerce failed to address Kaptan's comments in the record about factors detracting from the reliability of the Cerkezkoy benchmark in the Colliers report and thus did not apply an even-handed approach to evaluating the two reports. See Pl.'s Cmts. at 12–13.  However, in the Remand Results Commerce rectified its initial failure to address Kaptan's concerns about the Colliers report.  By providing reasoned disagreement to Kaptan's concerns about the adequacy of the benchmark, Commerce addressed the court's key concern with the report selection in the Final 2020 Order.  See Remand Results at 32–36.

The court previously remanded Commerce's decision to use benchmark data from Cerkezkoy from the Colliers report, instead of data from the C&W report, to value Nur's leasehold. Remand Order, 736 F. Supp.3d at 1333.  Commerce had failed to provide adequate explanation in the Final 2020 Order because it did not address Kaptan's arguments that the Cerkezkoy data was not reflective of the rental values in Trabzon, the location of the lease in question.  Id. at 1332. Faced with comments from Kaptan that Cerkezkoy differed from Trabzon in GDP, industrial development, distance from Surmene, and the value of foreign trade, Commerce did not address concerns that the "the estimated value of foregone rent for Nur's use of the Trabzon land could be inaccurately high if based on a nonrepresentative sample of higher-priced land rentals in a different area of Turkey."  Id.  Because Commerce's explanation in the Final 2020 Order failed to address "a colorable claim that the data that Commerce is considering is aberrational," Commerce was required to explain why it nevertheless chose the Cerkezkoy data.  Id.

Commerce offered adequate explanation for its determination on this issue in the Remand

Court No. 23-00131                                                                                           Page 20

Results.  It explained that Kaptan did not place adequate information in the record to suggest that

the factors it raised—like GDP, industrial development, distance from Surmene, and value of

foreign trade—detracted from the validity of the Cerkezkoy benchmark.  As Commerce noted:

> [W]hile Kaptan Demir raises concerns regarding a variety of such factors, including
> distance from Sürmene, GDP, value of foreign trade, and the stage of development
> of the land, there is no record evidence demonstrating that these differences
> between the C&W report and the Colliers report have a specific effect, such as data
> showing a consistent increase in land values in more distant provinces, provinces
> with higher GDPs, provinces with high trade levels, or in areas with more
> developed land. Unless such factors are adequately substantiated, Commerce
> cannot determine their relevance, and Kaptan Demir has not demonstrated their
> proportional effect; it just supplied data indicating that there are internal differences
> in the Turkish economy.

Remand Results at 35.

Kaptan, as an interested party, bears the burden of demonstrating the impact of the factors

it raises.  See QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011) ("[T]he

burden of creating an adequate record lies with interested parties and not with Commerce.").

Otherwise, interested parties could flood the record, pointing out numerous differences between

benchmarks that have little to no bearing on valuation, and force Commerce to thoughtfully

consider and evaluate these factors in its ultimate order, limiting its efficacy.  In other words,

without the requirement that parties demonstrate the relevance of the factors they raise in

comments, Commerce would be trapped—or at the very least, slowed—by spaghetti thrown at the

wall.

Where Commerce must choose between two imperfect valuation reports, it had discretion

to evaluate which report is generally more accurate, so long as its judgement is reasonable.  See

Timken Co. v. United States, 788 F. Supp. 1216, 1220 (1992) ("When Commerce is faced with

the decision to choose between two alternatives and one alternative is favored over the other in

**APPX020**

Court No. 23-00131                                                        Page 21

[its] eyes, then [it has] the discretion to choose accordingly if [its] selection is reasonable.")
(internal quotation marks and citation omitted).  See generally Borusan Mannesmann Boru Sanayi
Ve Ticaret A.S., 5 F.4th at 1375 ("Factual determinations . . . [are] best left to the agency's
expertise." (internal quotation marks and citation omitted)).  For a selection to be reasonable,
Commerce must respond to relevant, but not irrelevant points.  19 U.S.C. § 1677f(i)(3)(A); see
also NMB Singapore Ltd. v. United States, 557 F.3d 1316, 1320 (Fed. Cir. 2009); Özdemir Boru
San. ve Tic. Ltd. Sti. v. United States, 273 F. Supp. 3d 1225, 1252 (2017) ("Commerce must
consider relevant record evidence in determining the comparability of land parcels it uses in
creating a reasonable benchmark that lacks distortive pricing").  Here, even though Kaptan's
comments may have presented "colorable" concerns about mis-valuation, Commerce adequately
addressed those concerns by showing that the record failed to make them relevant.

       Given Commerce's handling of Kaptan's comments about the adequacy of the Cerezkoy
benchmark, the Remand Results provided substantial evidence to justify Commerce decision to
use the Colliers report rather than the C&W report to value the land.  In the Remand Order, the
court found that "rather than 'provide an explanation of the basis for its determination that
addresses relevant arguments, made by interested parties who are parties to the investigation or
review,' Commerce resorted to a process of elimination in which it struck the C&W report and
then selected the Colliers report by default."  Remand Order, 736 F. Supp. 3d at 1332.  However,
upon remand Commerce noted that it chose to use the Colliers report because "contemporaneous
original research from an independent, third-party source is a strict preference in comparing
benchmarks."  Remand Results at 13.  Analyzing both reports, Commerce found that the C&W
report bore higher risk of litigation-inspired fabrication because it was commissioned by Kaptan

**APPX021**

Court No. 23-00131                                                                    Page 22

shortly before these proceedings, and Commerce found that the Colliers report data was more contemporaneous with the period in which Nur acquired the lease, and thus likely more reliable. Id. at 13–17.  In explaining that these two factors were crucial in differentiating the reports, and in showing that Commerce has historically preferred to choose reports that were more contemporaneous and more independent, Commerce acted reasonably in choosing the Colliers report.[4]

Because Commerce offered an affirmative explanation for its decision to choose the Colliers report and adequately addressed concerns Kaptan raised about the Colliers report, the court sustains Commerce's Remand Results with regards to the choice of land valuation benchmark.

## CONCLUSION

In its Remand Results, Commerce offered substantial evidence to explain its determination that the BITT exemption was not specific, and it sufficiently justified its decision to use the Cerkezkoy benchmark from the Colliers report to value Nur's land.  Commerce's Remand Results are sustained.

---

[4] Kaptan alleges that Commerce's noted preference for contemporaneous, original research from an independent source is novel.  Pl.'s Cmts. at 6.  However, the Government points to previous agency practice preferring contemporaneity in land valuation reports, such as Final Results of Redetermination Pursuant to Court Remand, Risen Energy Co., v. United States, Consol. Court No. 20-03912, Slip Op. 23-48, at 9 (Ct. Int'l Trade April 11, 2023).  See Gov't Resp. at 20. Furthermore, the Government offers numerous examples of instances in which it looked unfavorably upon reports created for the purpose of litigation, such as Coated Free Sheet Paper from Indonesia: Final Affirmative Countervailing Duty Determination, 72 Fed. Reg. 60642 (Dep't Com. Oct. 25, 2007) and Certain Softwood Lumber Products from Canada: Final Affirmative Countervailing Duty Determination, and Final Negative Determination of Critical Circumstances, 82 Fed. Reg. 51814 (Dep't Com. Nov. 8, 2017).  See Gov't Resp. at 13–14.  Evaluating both the Colliers and C&W reports against this preference, Commerce offered substantial evidence to explain its choice of the Colliers report.

Page 23

Court No. 23-00131

/s/ *Gary S. Katzmann*

Gary S. Katzmann, Judge

Dated:  October 6, 2025
New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

KAPTAN DEMIR CELIK ENDUSTRISI VE
TICARET A.S.,

           Plaintiff,

   and

ICDAS CELIK ENERJI TERSANE VE
ULASIM SANAYI, A.S.,

           Plaintiff-Intervenor,

      v.

UNITED STATES,

           Defendant,

   and

REBAR TRADE ACTION COALITION,

           Defendant-Intervenor.

Before: Gary S. Katzmann, Judge
Court No. 23-00131

## JUDGMENT

This case having been submitted for decision, and the court, after due deliberation, having rendered an opinion; now, in conformity with that opinion, it is hereby

**ORDERED** that the United States Department of Commerce's Final Results of Redetermination Pursuant to Court Remand (Dep't Commerce Jan 21, 2025), are sustained; and it is further

**ORDERED** that judgment be, and hereby is, entered for defendant the United States.

**SO ORDERED.**

                         /s/ Gary S. Katzmann
                         Gary S. Katzmann, Judge

Dated:  October 6, 2025
       New York, New York